### CHARLES BELL, SHERIFF, ET AL. V. BEAZLEY, TRUSTEE.

Decided April 13, 1898.

**1. Charge—Statement of Issues—Request for Instructions.**

If the statement of the issues given in the court's charge was inaccurate or incomplete, instructions to remedy the defect should be requested by the party complaining.

**2. Charge—Written Instrument.**

It was proper for the court to instruct the jury as to the legal effect of a deed of trust, the issue of good faith in its execution being submitted to the jury in another part of the charge.

**3. Insolvent Debtor—Exchange of Property for Homestead—Fraud.**

The act of a debtor in failing circumstances in exchanging all of his property for a homestead is not a fraud upon creditors.

**4. Fraud—Deed of Trust—Preferences.**

A conveyance by an insolvent debtor of all his property in trust for the benefit of all his creditors, though certain creditors are preferred, is not fraudulent as to others.

**5. Statute of Frauds.**

A defense arising out of the statute of frauds is personal to the parties to the transaction, and can not be urged by a third party; creditors of an insolvent can not attack an exchange of his property for a homestead on the ground that the conveyance thereof, not being in writing, was void and constituted no consideration, though that fact may be considered as bearing on the question whether the transaction was real or simulated.

**6. Fraudulent Conveyance—Sale to an Insolvent.**

In a sale by a debtor to one who, in consideration, assumes the payment of his debts, the insolvency of the purchaser is not a circumstance tending to show fraud, since the creditors are not placed in worse condition by reason of that fact.

**7. Partnership—Trust.**

One who buys the interest of a retiring partner in firm property and assumes his liabilities does not hold the property in trust for the creditors of the firm so as to prevent him from making a deed of trust thereof for the benefit of such creditors with preferences.

**8. Partnership—Conveyance by One Partner.**

One partner can not, without the consent of the other, transfer or encumber all the assets of the firm. He is agent for his partner in conducting the business, but not in acts which look to its destruction.

**9. Same—Conveyance—Consideration.**

One of two partners sold out to a third person, who assumed the debts of the firm and afterwards consented to a deed of trust by the remaining partner conveying the property for the benefit of creditors. Held, that if the transfer by the retiring partner was without consideration, his failure to consent to the deed of trust rendered it invalid, and a charge which required other circumstances in addition to this, in order to avoid the deed, was erroneous.

APPEAL from the County Court of Brown. Tried below before Hon. E. C. HARRELL.

*Goodwin & Grinnan,* for appellants.

*R. P. Connor, W. J. Scott,* and *T. C. Wilkinson,* for appellee.

FISHER, CHIEF JUSTICE.—This is a suit by the appellee, as trustee, to recover the value of certain goods levied upon and taken from his possession by Charles Bell, as sheriff of Brown County, by virtue of a writ of attachment issued in a case wherein the Temple Grocer Company is plaintiff and J. M. and D. M. Senter are defendants.

Plaintiff in his petition alleged that at the time the goods were levied upon and taken from his possession, he was holding the same as trustee, by virtue of a deed of trust executed by D. M. Senter and A. G. Elliott, for the purpose of securing the debts of certain creditors therein named.

The appellant, Temple Grocer Company, in its answer, in effect pleaded that the deed of trust was executed in fraud of creditors of the firm of Senter & Co., which was at the time composed of J. M. and D. M. Senter; and further, that previous to the execution of the deed of trust J. M. Senter had, by a pretended sale, transferred his interest in the firm to A. G. Elliott. That J. M. Senter at the time was the real owner of the goods, and that his pretended sale to Elliott thereof was in fraud of creditors and without consideration, and was not a real and bona fide transaction, but was simulated, and that J. M. Senter was not a party to the execution of the deed of trust, and never agreed or assented thereto. Therefore, the trustee, Beazley, acquired no right thereunder as against the creditors of the firm of Senter & Co.

There is evidence which tends to show that before the execution of the deed of trust J. M. and D. M. Senter were partners, engaged in the mercantile business, and that J. M. Senter sold and transferred his interest to his brother-in-law, A. G. Elliott, and as consideration therefor, Elliott placed Senter in possession of a tract of land in Eastland County, then occupied by Elliott and his wife as their homestead, which after the trade was also occupied by Senter and wife as their homestead.

No deed of conveyance was executed by Elliott to Senter for this property. Elliott at the time also agreed to continue the business with D. M. Senter as partner, as it had been previously conducted and carried on between J. M. and D. M. Senter, and agreed to become liable for the debts due by J. M. Senter as a member of the old firm.

There are some facts and circumstances in the record which may have a tendency to show that the trade between Elliott and J. M. Senter was not a real, but a simulated sale, and without consideration; but, upon the other hand, there is evidence which tends to show that it was bona fide, and made in good faith. In other words, the evidence upon this question is of such a character as would authorize the submission of the question to the jury. J. M. Senter was not a party to the execution of the deed of trust, nor did he assent thereto after it was executed. It was executed by D. M. Senter for himself and A. G. Elliott. Elliott subsequently ratified the execution of the instrument, which conveyed the goods in question, together with all previously owned by J. M. and D. M. Senter, for the purpose of securing debts due by the old firm of Senter & Co., and also some debts due by D. M. Senter and A. G. Elliott.

It appears from the evidence that J. M. and D. M. Senter and also

Elliott are practically insolvent and were so at the time of the transactions noticed.

The first assignment of error complains that the court did not accurately state the issues in the case to the jury in its charge, and that the statement made was calculated to mislead and confuse the jury.

We think the charge in effect properly stated the issues in the case; but if there were any inaccuracies in this respect, or if the statement was not full enough, it should have been corrected by a special charge. It has been held that the failure of the court to state all the issues, or slight inaccuracies made in the statement of a case, are not reversible errors; and if the party complaining is dissatisfied with the charge in this respect, he should request by special instruction an additional or more accurate statement.

The charge complained of in the second assignment of error is not subject to the objections urged against it. It was the duty of the court to submit to the jury the legal effect of the deed of trust, and this is the effect of the charge complained of. Thereafter, the court in effect instructed the jury that if the deed of trust was executed in good faith to find for the plaintiff; and also, in effect, instructed the jury, that if it was executed with intent to defraud the creditors of Senter & Co., that they must find for defendant.

There are assignments of error which complain of the refusal of the court to give certain charges requested by the appellants, to the effect that if J. M. Senter sold his interest in the firm of Senter & Co. to Elliott with intent to hinder, delay and defraud the creditors of Senter & Co., to find for the defendant; and further, to the effect that if the deed of trust was executed for the purpose of defrauding the creditors of Senter & Co., it would be void. Under the facts of this case we do not believe that charges upon these subjects were called for. If in fact the sale of the goods by J. M. Senter to Elliott was real and not simulated, and the effect thereof may have been to hinder and delay his creditors, it would not, in law, have been a fraud upon their rights, when tested by the facts and circumstances concerning the sale. As a consideration of the sale, J. M. Senter received from Elliott lands, then occupied and used by Elliott and his wife as a homestead, which was so purchased in exchange of the goods by J. M. Senter for a homestead for himself and his family. It appears that all of the property owned by Senter at that time subject to execution was his interest in the stock of goods in question. This he exchanged for the homestead at a time when he was in failing circumstances, and might be said actually insolvent. The fact that one in failing circumstances or practically insolvent disposes of all of his available assets in exchange for a homestead is not in law considered a fraud upon creditors. North v. Shearn, 15 Texas, 175; Swayne v. Chase, 30 S. W. Rep., 1049; Finn v. Krut, 34 S. W. Rep., 1016.

The effect of such a transaction would be to convert the goods, the assets of the insolvent debtor, into property which would not be liable for

or subject to his debts; but the principle announced in the cases cited is to the effect that such a transaction would not in law be a fraud upon creditors, as the insolvent debtor has the right to devote what property he may own and possess to the acquisition of a homestead.

Now, turning to the transaction relating to the execution of the deed of trust, we do not believe that viewed in any light consistent with the facts its execution could be considered a fraud upon the rights of the creditors, and it is clear that no harm or injurious effect resulted to the creditors by reason of the execution of that instrument. All of the creditors, including the appellant, were named as beneficiaries in the deed of trust, but some were preferred before the appellant. All of the assets and property of Elliott and D. M. and J. M. Senter subject to execution were conveyed by this instrument. Elliott, by reason of the contract between him and J. M. Senter, became bound and liable to the creditors of J. M. and D. M. Senter for the debts of the old firm of Senter & Co. No one was released from liability by reason of the execution of the deed of trust or the transactions between Senter and Elliott, but the creditors could hold them all three bound and liable for the debts of the firm. It is not contended by any of these charges that there was fraud in preferring the claims of other creditors to that of the appellant, nor is it perceived that such an issue is raised by the pleadings or facts, but the contention is that the deed of trust, by reason of the facts and circumstances under which it was executed, was fraudulent in toto as to the creditors of D. M. Senter & Co. If the deed of trust was executed by parties having the authority in law to execute it, under no possible phase of the case, as presented by the evidence, can it be considered as defrauding the creditors, for the creditors received by that instrument all that they could have possibly reached by execution or any other character of judicial process. The appellants requested an instruction, which was refused, to the effect that because there was no written transfer from Elliott to Senter conveying the homestead in Eastland County, in consideration of the goods, that said sale was without consideration and void; thereby seeking to apply to that transaction the provisions of the statute of frauds, requiring sales of land, in order to be valid, to be in writing. This is a matter that could not be urged by the appellants in order to defeat the sale. A defense arising under the statute of frauds is personal to the parties to the transaction, and can not be urged by a third party. Railway v. Settegast, 79 Texas, 256.

We do not mean by this to say that the jury could not consider the fact that in the trade between Elliott and Senter there was no deed executed by Elliott for the land conveyed to Senter. What we mean to say is, that the failure to comply with the statute of frauds in the sale of real estate can not be urged by itself alone, by a third party, to defeat the sale of real estate by others. The fact that the parties to the sale failed to observe the requirements of the law relating to the conveyances of real estate may be considered by the jury as a fact or circumstances having

some bearing upon the question, whether the sale was real or pretended and simulated.

Under the facts of this case it would have been error to have given the charge requested as set out in the eighth assignment of error. J. M. Senter had the right to sell the goods if he so desired to Elliott in exchange for a homestead, and the additional promise by Elliott to pay the debts due by Senter & Co. would not illegally have affected the sale, but would have added to its consideration. The fact that Elliott was insolvent and unable to comply with his promise would not, under the facts of this case, have tainted the transaction with fraud, for the creditors would be in no worse position than they were before, because it is clearly shown that J. M. Senter was insolvent and as much unable to pay the debts of the firm as Elliott.

The appellants contend in their sixteenth assignment of error, that if the sale by Elliott to J. M. Senter was made in good faith, then Elliott, by reason of the promise to pay the debts of the firm, held the goods in trust for the creditors of the old firm of Senter & Co., and that the preferences given in the deed of trust to some debts created after Elliott and D. M. Senter took control of the business as partners, was unauthorized. In other words, the contention is that the goods should be applied to the payment of the debts due by the old firm, of which class is the debt of the appellant.

We can not agree with this contention. The effect of the promise by Elliott to Senter was that Elliott should take the place of J. M. Senter in the firm, and would assume his liabilities. The creditors of the firm could take advantage of this promise, and in an action against Elliott hold him bound thereto; but this would give the creditors no lien upon the goods, nor any greater right thereto than they would have had if J. M. Senter had never sold them. No lien resulted to the creditors in their favor by reason of this promise made by Elliott; but the effect of it would be simply to give them a personal action against him for the debts due by the old firm of Senter & Co.

The court in the charge complained of in the third assignment of error grouped many facts, the existence of all of which, if the jury belived them to be true, would authorize them to return a verdict for the defendant. Some of these facts, so far as the question of fraud is concerned, as relating to the sale to Elliott and the execution of the deed of trust, have been disposed of by what has been previously said upon those subjects. But the charge presents a combination of facts in the conjunctive, the existence of all of which the jury must believe in before they would be authorized to return a verdict for the defendant.

Among other facts submitted is the proposition whether the sale by J. M. Senter to Elliott was without consideration. The court tells the jury that if this was true, and if they believe in addition thereto in the truth of the other facts submitted, then they should return a verdict for the defendant. Now this was error. If in fact the sale between J. M. Senter and Elliott was simulated and without consideration, the jury

should have found in favor of the defendant, independent of the consideration of any other question or combination of facts submitted in the charge. There are some circumstances in the record which would authorize the submission of the question whether the transaction between Elliott and J. M. Senter was in good faith or simulated, and whether or not based upon a consideration deemed valuable in law. If the jury had found that the sale was a simulated transaction, and not based upon a consideration, then J. M. Senter, as to the creditors of the firm, would have remained the owner of the goods, and the assent of Elliott to the execution of the deed of trust would not have added any force to that conveyance. It is clear from the facts that J. M. Senter never agreed to the execution of that instrument, and if he never in fact sold his interest in the goods to Elliott the validity of the execution of the deed of trust could only be maintained upon the proposition that one partner can transfer or incumber all the assets of the firm without the consent of the other partner. If there was no sale to Elliott, then under the facts D. M. and J. M. Senter still remained partners in the business and had control of the goods in question.

Now this brings us to the question whether the deed of trust ·executed by D. M. Senter alone was valid and had the effect of transferring to the trustee the goods in question. For the usual conduct of the business in which the firm is engaged, each partner is the agent therefor, and in the conduct of the firm business a partner has the authority to bind the firm in buying and selling and in creating firm liabilities; but acts and conduct which look towards a destruction of the firm must be participated and joined in by all the members thereof. 1 Bates on Part., sec. 338; 17 Am. and Eng. Enc. of Law, 1045, 1046.

It appears from the facts that all the property of the firm consisted of the goods transferred to the trustee. The effect of that transfer was to dispose of all of the assets and to dissolve and destroy the life of the firm. The business that they were engaged in could no longer continue after that instrument was executed, if it was a valid conveyance of the property. It transferred the goods, not only for the purpose of securing the debts, but gave the trustee absolute possession of the property, and he took possession by virtue of the instrument, and was carrying on the business and disposing of the goods when they were seized and levied upon. The effect of this transaction was to destroy the firm—not to continue its existence—and the execution of an instrument that had this ·effect would not be in the exercise of the usual and ordinary power of a partner in the pursuit and conduct of the firm business.

Therefore, the principle stated in the authorities cited would apply in such a case, and the effect would be to hold that in such a transaction it requires the concurrence of all the partners to make it valid. This phase of the case should have been presented by the charge of the court, and it was error to submit it in the way pointed out.

The charge requested as set out in the ninth assignment of error was not applicable to the facts. It is clear from the facts in the record that

Elliott bought, if it was a bona fide sale, all the interest that J. M. Senter had in the property, and it is clear that D. M. Senter was a partner in the firm, and if Elliott bought the interest of J. M. Senter and assented to the execution of the deed of trust made by D. M. Senter, it would transfer the entire stock of goods to the trustee.

For the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*